CASE 38—PETITION EQUITY—DECEMBER 6.

## Ouerbacker, Gilmore & Co. v. Claflin & Co.

### APPEAL FROM BELL CIRCUIT COURT.

1. PREFERENCE OF CREDITORS.—Where debtors had become hopelessly insolvent by a course of systematic fraud, practiced with the express intention of failing in business, the transfer by them of an account in payment of an antecedent debt must be held to have been made with the design to prefer and in contemplation of the coming failure, and, therefore, operated as an assignment under the statute. The integrity of the creditor secured does not enter into the transaction, nor under

the circumstances does the smallness of the demand secured affect the principle involved, the general purpose of the debtors being clear.

2. GRANTING OF ATTACHMENT BY CLERK.—Under section 238 of the Civil Code and amendment of April 5, 1888, authorizing the clerk to "grant" an attachment in suits for debts not due, the clerk may issue the attachment without making a separate order granting the attachment or directing himself to issue the writ.

THOS. H. HINES, D. B. LOGAN AND A. K. COOK FOR APPEL-LANTS.

1. Under the pleadings and the proof there was a manifest contempla-tion on the part of the appellees, R. Miller & Co., to become insol-vent, and a systematic attempt to defraud their creditors. The trans-fer, therefore, by them of an account to one of those creditors to satisfy his claim against them will operate as a preference of him to the other creditors, which preference will work an assignment for the benefit of the creditors generally. (Grimes' Assignee v. Grimes, 86 Ky., 511; Baker, &c., v. Kinnaird, 14 Ky. Law Rep., 697; Citi-zens' National Bank of Winchester v. Renick, 13 Ky. Law Rep., 747; General Statutes, chap. 44, art. 2, secs. 1, 2.)

2. The attachment for $4,800 in favor of The H. B. Claflin Co. should have been discharged on the face of the papers, and the proceeds of the property distributed to the creditors *pro rata* because there was no order by the circuit court, the circuit judge, the county judge, or the circuit clerk granting the attachment. Section 238 of the Civil Code, as amended, requires that an order granting the attachment shall precede the issual of the attachment and be the basis therefor, when, as in this case, the debt for which the attachment issues is not due. (Civil Code, sec. 238; Glaser v. Franks, 16 Ky. Law Rep., 25; Taylor v. Taylor, 78 Ky., 470; Hoffman v. Brungs, 83 Ky., 406.)

UNTHANK & MONTFORT FOR APPELLEES.

1. The payment of the claim of the creditor, Pursifull, was not made to prefer him to the other creditors in view of the fact that his claim was due while the claims of the other creditors were not yet due.

The appellees, R. Miller & Co., were solvent at the time the pay-ment to Pursifull was made, because their assets were then largely in excess of their debts, which were due. An act to prefer certain creditors to others must have been done in contemplation of present insolvency.

2. The circumstances showing that no preference was intended, the pay-ment to a creditor will not work a preference. The payment to Pur-cifull was made in the usual course of business, and appellees, Miller & Co., were constantly paying the accounts as they fell due. (Hen-dricks, &c., v. Silva, 89 Ky., 427; Grimes v. Grimes, 86 Ky, 571; Griffith v. Cox, 79 Ky., 566)

Ouerbacker, Gilmore & Co. v. Claflin & Co.   ·

3. Under sec. 238 of the Civil Code as amended, the circuit clerk is not
required to issue to himself an order of attachment before granting
the attachment itself.  The amendment having given to the circuit
clerk the same judicial discretion and jurisdictional power as was in
the county court, the circuit judge and the county judge, he may issue
the attachment without doing the useless act of first writing to him-
self an order so to do.  (Amendment to sec. 238 Civil Code; Civil
Code, secs. 196, 240; Kleine, Timberman & Co. v. Nie, &c , 88 Ky.,
549.)

4. A judgment sustaining an attachment will not be disturbed upon an
appeal in the absence of a bill of exceptions.  (Henderson v. Waters'
·  · Ex'r, 14 Ky. Law Rep., 667.)

N. J. WELLER for appellees ROSENBURG, FLEXNER & MEN-
DEL.

Unless the court holds that there was an act of preference the at-
tachment of appellees Rosenburg, Flexner & Mendel, must be sus-
tained, because their claim was entirely due when the attachment
issued, and consequently does not come within the objection raised
under the 238th section of the Civil Code.

JUDGE HAZELRIGG delivered the opinion of the court.

Appellees, The H. B. Clafflin Company, and others,
are attaching creditors of R. Miller & Co., a firm of
retail merchants lately engaged in business in Pine-
ville, Kentucky.   They obtained their attachments
from the clerk without an independent order grant-
ing them on debts not due.   The appellants are un-
secured creditors of that firm who seek to vitiate
the lien of the appellees, first, by showing that prior
to the issual of the attachments the members of the
firm, in contemplation of insolvency, and with the
design to prefer one of their creditors to the exclu-
sion of others, assigned a part of their assets, to-wit:
An account on one of their customers, J. W. Johnson,
for some three hundred and twenty-five dollars to ap-
pellee J. M. Purcifull, to whom they were indebted in
the sum of two hundred and thirty-six dollars.

Second, because there was no order granting the attachment independent of the order of attachment itself.

The chancellor sustained the attachments and gave priority to the appellees in the distribution of the funds in controversy.

(1.) At the time of the assignment of the claim on Johnson to Purcifull, which was on October 1, 1892, the firm was hopelessly insolvent, and had become so by a systematic course of fraud practiced with the express intention of failing in business. In August and September, 1892, they bought large quantities of goods in New York and elsewhere on a credit, which they sold at once for cash at a large discount, and shipped secretly to parties in Memphis and Bowling Green. They also had their clerk to ship to friends in Cincinnati trunks of fine merchandise, with instructions to him to keep the transaction a secret. Every act, therefore, of these debtors is tainted with suspicion, and the assignment of a claim on a customer who was solvent and able to pay in a few weeks at most, and who did very shortly pay the claim to Purcifull, must be regarded as having been done in contemplation of the coming failure, and with a design to favor their friend and creditor, to whom they appear to have been under some obligation.

The integrity of the creditor Purciful, which is not doubted, or in any way assailed, does not enter into the transaction, nor does the smallness of the demand secured to him affect the principle involved. Where the transaction is insignificant, the design to prefer in contemplation of insolvency may not be so clearly

perceptible; but if the general purpose of the debtor be otherwise clear, as it is in this case, the transaction more easily falls within the provisions of the statute. We are convinced that the act of transferring this claim to Purcifull in discharge of this antecedent debt, operated as an assignment and transfer of all the property and effects of the debtors, and must inure to the benefit of all the creditors. To the extent Purcifull may have paid cash on the claim he will be protected.

(2.) In an action brought before the maturity of the debt sued on, the clerk of the court, in which it is pending, may grant an attachment against the property of the defendant if the petition show the existence of certain grounds enumerated in the Code. (Sections 237 and 238 and amendment of April 5, 1888.) This jurisdictional power is not dependent on the absence of the presiding judge of the county court or any circuit judge, but in this respect is unlimited. Precisely the same power is conferred on him by this amendment, as is conferred on him in section 196 of the Code in actions when the debt is due. It is impossible to detect any difference in the import of the language used in the section giving him power to make the order of attachment where the debt is due, and that given him in cases where the debt is not due.

There is no more reason, when the language of the section is considered, for the contention that in actions brought pursuant to sections 237–8, the clerk should make an independent order granting the attachment, than that he should do so when the action is brought under section 196, and certainly if the language of

the sections does not require it, we can conceive of no reason why the clerk shall make an order to himself directing himself to do that which the statute empowers him to do in plain terms.

Under the conditions named in section 238, the clerk "may grant an attachment against the property of the defendant."

Under section 196 under certain conditions, "an order of attachmment shall be made by the clerk." In both classes of cases, the writ issued by the clerk, is the "order of attachment," and is so designated in the sections of the Code applying to actions for debt due and not due.

Before the amendment of April, 1888, the clerk was without the power to make the order of attachment until permitted to do so by the order of another officer. There is now no reason conceivable why he may not make such order, as permission from another officer is no longer required. Such a construction would be purely technical, is not demanded by the letter or spirit of the law, and certainly there is no intelligent reason for requiring the clerk to direct an order to himself.

For the reasons indicated, however, the judgment is reversed, with directions to distribute the funds in the hands of the receiver on principles consistent with this opinion.